IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK YAKOPOVICH, NANCY YAKOPOVICH, | ) ) ) |
| Plaintiffs, | ) 2:20-CV-00331-CCW ) ) |
| v. | ) ) ) |
| BOROUGH OF CENTERVILLE, MYRON NYPAVER, | ) ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment, ECF No. 38, filed by Defendants Borough of Centerville and Myron Nypaver. For the reasons set forth below, Defendants' Motion will be GRANTED.

**I.     Background**

**A.     Relevant Procedural History**

In their one-count Complaint, Plaintiffs Mark and Nancy Yakopovich claim, under 42 U.S.C. § 1983, that Centerville and Mr. Nypaver (Centerville's Code Enforcement Officer) violated their rights under the Equal Protection Clause of the Fourteenth Amendment by citing them "for code violations on their properties including, but not limited to, accumulation of rubbish or garbage, uncut grass and motor vehicles," while failing to cite similarly situated property owners for similar code violations. *Id.* at ¶¶ 11–15. Plaintiffs do not, however, claim that the unlawful treatment they were allegedly subjected to was based on their membership in any protected class (nor do they allege membership in any protected class). Accordingly, Plaintiffs are proceeding here under the so-called "class of one" theory. *See id.* at ¶¶ 26–33 (Count I, "Equal Protection –

Class of One"); *see also Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (finding "class of one" Equal Protection claim to be viable cause of action).

After the close of discovery, Defendants moved for summary judgment, arguing that (1) any claim based on citations issued before March 6, 2018 is time barred; (2) Plaintiffs cannot point to evidence sufficient to support their class of one Equal Protection claim; and (3), in the alternative, Mr. Nypaver is entitled to qualified immunity. Defendants' Motion has been fully briefed and is therefore ripe for disposition. *See* ECF No. 39 at 1.

### B.      Undisputed Material Facts

The following relevant, material facts, drawn from the parties' competing concise statements of material fact, responses thereto, and related exhibits, are undisputed unless noted otherwise. *See* ECF No. 43 (Plaintiffs' Response to Defendants' Concise Statement of Material Facts and Additional Material Facts) and ECF No. 47 (Defendants' Response to Plaintiffs' Statement of Additional Material Facts).

#### 1.      Centerville's Quality of Life Ordinance and SWEEP Tickets

On November 10, 2015, Centerville enacted Ordinance No. 05-15 (the "Ordinance"), "an Ordinance Adopting the Quality of Life and Violations Ticket Process in the Borough of Centerville." *See* ECF No. 43 at ¶ 8.[1] Centerville's Code Enforcement Officer, among others, is charged with enforcing the Ordinance. *See* ECF No. 40-4 at 12. Violations of the Ordinance "may be cause for a citation, a violation ticket, and/or a notice of violation to be issued to the violator." *Id.* "SWEEP" is an acronym for "Solid Waste Education and Enforcement Program," which is enforced under the Ordinance. *See* ECF No. 47 at ¶ 49. As explained by Mr. Nypaver during his deposition, a SWEEP ticket "is best described as almost like a parking ticket. It's for a specific

---

[1] The date of enactment is ostensibly disputed between the parties; however, the date of enactment listed on the Ordinance is plainly November 10, 2015. *See* ECF No. 40-4 at 17. As such, there is no genuine dispute.

violation that is found on an exterior of a property. It could be one of the items listed on the SWEEP ticket that might meet the situation that is found." ECF No. 45-1 at 23:4–9. Violations on the exterior of a property that may result in a SWEEP ticket being issued to a property owner include (but are not limited to) "accumulation of rubbish or garbage," "high weeds, grass, or plant growth," or "motor vehicles." *See* ECF No. 40-3 at 19 (November 8, 2019 SWEEP Ticket issued to Mark Yakopovich for "accumulation of rubbish or garbage.").

### 2. The Parties

Plaintiffs own property in Centerville. *See* ECF No. 43 at ¶¶ 2, 4–7. They have been Centerville residents for more than 30 years. *See id.* at ¶ 4. In addition to their primary residence, Plaintiffs own two commercial properties, one which is operated as a storage facility, and the other which is vacant. *See id.* at ¶¶ 4–6; *see also* 40-2 at 14:21–15:17, 22:16–21 (testimony of Mr. Yakopovich discussing properties located at 379, 409, and 412 Old National Pike).

Mr. Nypaver is the Code Enforcement Officer for Centerville. *See* ECF No. 43 at ¶ 3. Mr. Nypaver has held that position since 2013. *See* ECF No. 45-1 at 14:9–13. Centerville employs him on a part-time basis. *See* ECF No. 47 at ¶ 48. Mr. Nypaver's duties include (but are not limited to) enforcement of the Ordinance through issuing SWEEP Tickets. *See id.* at ¶ 50; *see also* ECF No. 45-1 at 19:22–20:8 (testimony from Mr. Nypaver explaining that his duties for Centerville include enforcement of the "International Property Maintenance Code, the SWEEP ordinance and the landlord licensure program and business inspections."). Mr. Nypaver testified that he is made aware of potential violations of the Ordinance through complaints made to Centerville (by, for example, Centerville council members) and by his own visual observation of a property:

Q. How do you go about identifying properties that require a SWEEP ticket?

>    A.   Either by complaint that I receive from Cheryl [Matesich, Centerville's secretary], either by visual inspection or some other complaint, it could be a councilman or a councilperson notifying me direct of one of the constituents.

ECF No. 45-1 at 23:17–23;[2] *see also* ECF No. 47 at ¶¶ 51, 54.  With respect to identifying Ordinance violations by visual observation, Mr. Nypaver testified that he patrols Centerville from time to time.  *See* ECF No. 47 at ¶ 52; *see also* ECF No. 45-1 at 24:23–25, 25:24–26:17, and 27:9–18.  Mr. Nypaver further testified that he patrols Centerville in four "patches" (and other areas) and that he is capable of patrolling two patches in a single outing.  *See* ECF No. 47 at ¶ 53; *see also* 45-1 at 26:15–27:4, 80:5–15.  Mr. Nypaver also testified that he might observe a given property anywhere from two to less than 10 times per year in the course of his patrols.  *See, e.g.,* ECF No. 45-1 at 80:16–24; 92:1–93:8.

### 3.   Enforcement of the Ordinance and SWEEP Tickets

Plaintiffs assert in their Complaint that they have been cited more than 30 times over the last 20 years for various Borough code violations.  *See* ECF No. 1 at ¶ 12.  That total number of citations is a "guess" on Plaintiffs' part.  *See* ECF No. 43 at ¶ 22.  The record before the Court at present, however, includes eight tickets:  three issued in 2016, four issued in 2017, and one issued in 2019.  *See* ECF No. 43 at ¶¶ 10, 16, and 24.  The most recent of these was issued on November 8, 2019, "for accumulation of rubbish or garbage."  ECF No. 47 at ¶ 56; *see also* ECF No. 40-3 at 19 (November 8, 2019, SWEEP Ticket issued to Mark Yakopovich).  Mr. Yakopovich never contested or appealed this ticket;  indeed, he paid the $50 fine, conceding that his property was in violation of the Ordinance at the time the November 8, 2019 SWEEP Ticket was issued.  *See* ECF No. 43 at ¶¶ 9–10 and 13.

---

[2] It is not clear to the Court whether Mr. Nypaver meant to say "it could be a…councilperson notifying me direct[ly] of one of the constituents" or "it could be a…councilperson notifying me direct[ly] [or] one of the constituents."  ECF No. 45-1 at 23:19-23.  That said, the thrust of Mr. Nypaver's testimony is clear:  complaints are one way that a property condition potentially warranting a SWEEP Ticket is brought to Mr. Nypaver's attention.

Between some unspecified time in 2017 and September 1, 2020, Mr. Yakopovich took more than 200 photographs of other properties in Centerville; these photographs purport to depict visible Ordinance violations. *See* ECF No. 47 at ¶¶ 57–58.[3] Many of the photographs are dated only by the year in which they were taken, and Plaintiffs do not attempt to tie any of the photographs to a date on which Mr. Nypaver patrolled or issued a complaint in the area in which the property depicted in a given photograph is located. *See, generally*, ECF No. 45-6.

When Mr. Nypaver was questioned at his deposition about a subset of these photographs—which purport to depict properties with violations but which did not receive SWEEP tickets—he agreed that some of the photos depicted what appeared to be violations but, in general, explained that no ticket was issued because he either (1) did not observe the violation during a patrol (because, for example, the alleged violation may not have been visible from the road), (2) never received a complaint alerting him to the violation, or (3) the property depicted was the subject of some other enforcement action. *See* ECF No. 47 at ¶¶ 57–58 and 60–62 (including Defendants' Response); *see also,* ECF No. 44 at 5 (collecting citations to Mr. Nypaver's deposition testimony, ECF No. 45-1); *see also, e.g.*, ECF No. 45-1 at 65:17–66:9 (discussing ECF No. 45-4 at 23), 72:5–73:16 (discussing ECF No. 45-4 at 31), 93:9–94:23 (discussing ECF No. 45-4 at 57), and 101:21–108:24 (discussing ECF No. 45-4 at 103).[4] Thus, while Defendants dispute Plaintiffs' contention that their photos demonstrate "the discrepancy" in enforcement, *see* ECF No. 47 at ¶ 59, the parties do not appear to dispute that the photos at least stand for the fact that not every Ordinance violation resulted in a SWEEP Ticket.

---

[3] Although Defendants dispute whether the photos actually depict Ordinance violations (noting, for example, that "Mr. Nypaver disagreed with Attorney Sansone's assumptions of the conditions of various properties and/or the visibility from the street of said alleged conditions of various properties," ECF No. 47 at ¶ 57 (including Defendants' Response), it does not appear that there is a dispute that Mr. Yakopovich took the photos or that Plaintiffs believe they depict Ordinance violations.

[4] In sum, Mr. Nypaver was shown about 19 of the more than 200 photos taken by Plaintiffs. *See* ECF No. 58 (including Defendants' Response).

For their part, Defendants produced a log of SWEEP Tickets issued in Centerville from May 2016 until June 2020. *See* ECF No. 46-1. In 2019, Centerville issued more than 50 Sweep Tickets to more than 20 different property owners, one of whom was Mark Yakopovich. *See id.* at 10-11.

## II.   Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue,* 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87.  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence;  there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).

**IV.   Discussion**

In support of their Motion, Defendants advance two arguments that together are dispositive.  First, Defendants point out that because the citations on which Plaintiffs' Complaint is based were each individually actionable, they cannot be aggregated under the continuing violation doctrine.  Therefore, to the extent Plaintiffs' claim is based on a citation or ticket issued before March 6, 2018, such a claim is barred by the applicable two-year statute of limitations.  As such, Defendants maintain, Plaintiffs' claim rises or falls on just the November 8, 2019, SWEEP ticket, which was the only ticket issued within the relevant limitations period.  *See* ECF No. 39 at 6.  Second, with respect to the November 2019 ticket, Defendants argue that Plaintiffs' evidence "falls far short of meeting their high burden of proving a class of one equal protection violation."

ECF No. 39 at 7. The Court agrees on both points, and summary judgment will be entered in Defendants' favor.[5]

### A.   Any Claim Based on Citations or Tickets Issued Before March 6, 2018 Is Time-Barred

"Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark,* 440 F.3d 125, 126 (3d Cir. 2006) (citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989)); *see also Nguyen v. Pennsylvania,* 906 F.3d 271, 273 (3d Cir. 2018) ("Section 1983 has no statute of limitations of its own, but borrows the statute of limitations from state personal-injury torts.") (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Under Pennsylvania law, personal injury claims are subject to a two-year statute of limitations. *See Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) (citing 42 Pa. Cons. Stat. Ann. § 5524); *see also Williams v. Fedarko*, No. 17-313 Erie, 2019 U.S. Dist. LEXIS 27415, at *6 (W.D. Pa. Feb. 21, 2019) (Baxter, J.) (noting that, in Pennsylvania, "a § 1983 action must be filed no later than two years from the date the cause of action accrued").

Plaintiffs do not address Defendants' argument that, to the extent their claim is based on any citation issued before March 6, 2018, it is time-barred. *See* ECF No. 44 at 4–8. As such, the Court finds that Plaintiffs have waived any claim related to citations issued before March 6, 2018. *See Walsh v. Fusion Japanese Steakhouse, Inc*., No. 2:19-CV-00496-CCW, 2021 U.S. Dist. LEXIS 128912 (W.D. Pa. July 12, 2021) (Wiegand, J.) ("A party that fails to address an argument in its brief in opposition to a motion for summary judgment waives that argument.") (citing *Aetna*

---

[5] In the alternative, Defendants argue that Mr. Nypaver is entitled to qualified immunity. Because the majority of Plaintiffs' claim is time-barred and Plaintiffs cannot, viewing the evidence in the light most favorable to them, make out a class of one equal protection violation with respect to the remaining ticket, the Court need not decide the qualified immunity issue.

*Health Inc. v. Davila*, 542 U.S. 200, 212 n.2 (2004) and *Travitz v. Ne. Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994)).

Furthermore, even if Plaintiffs had addressed Defendants' statute of limitations argument, applicable law would nevertheless dictate the same result. In another case involving a class of one Equal Protection claim, the United States Court of Appeals for the Third Circuit found in a nonprecedential opinion that,

> "[I]ndividually actionable allegations," even if relatively minor, however, "must be raised within the applicable limitations period." *O'Connor*, 440 F.3d at 127. Because a selective prosecution claim under the Equal Protection Clause may be established by "a single discriminatory act," *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1186-87 (7th Cir. 1986), the claim based on it accrues at the time of the discriminatory or irrational enforcement action. *See O'Connor*, 440 F.3d at 127.

*Patterson v. Strippoli,* 639 Fed.Appx. 137, 141 (3d Cir. 2016). Indeed, the law is clear that there is "a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated" under the continuing violation doctrine. *O'Connor*, 440 F.3d at 127; *see also AMTRAK v. Morgan,* 536 U.S. 101, 113 (2002) ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Like in *Patterson*, the citations at issue here are discrete acts. *See* 639 Fed.Appx. at 140–41. Accordingly, to the extent Plaintiffs' claim is premised on citations issued before March 6, 2018, it is time-barred. Therefore, Plaintiffs can proceed only on the November 8, 2019 ticket.

> **B.    Plaintiffs' Evidence is Insufficient to Support a Class of One Equal Protection Claim**

Next, Defendants contend that Plaintiffs cannot point to evidence sufficient to "meet[] their high burden of proving a class of one equal protection violation." ECF No. 39 at 7. Defendants maintain that "Plaintiffs' admissions that garbage or debris littered their property as depicted in

9

photographs compel the entry of summary judgment in Defendants' favor," and that "Plaintiffs cannot identify any property owners with similar violations at the same time who were not so cited." *Id.* Furthermore, Defendants argue that Plaintiffs' evidence cannot save them because "Plaintiffs' submissions of random photographs without specific dates or times is insufficient as a matter of law to establish irrational and wholly arbitrary treatment." *Id.*

"Section 1983 'provides a federal cause of action for the violation of a federal right.'" *Muhammad v. Abington Twp. Police Dep't,* 37 F.Supp.3d 746, 752 (E.D. Pa. 2014) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Accordingly, "[t]o establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citation omitted). And, to survive summary judgment on an alleged violation of the Equal Protection Clause of the Fourteenth Amendment under the class of one theory, a plaintiff must be able to point to evidence from which a jury could conclude that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (discussing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

Taken as a whole and viewed in the light most favorable to the nonmoving party, there are two reasons why the evidence here "could not lead a rational trier of fact to find for" Plaintiffs, and Plaintiffs therefore cannot establish a genuine issue of fact for trial on their claim. *Matsushita*, 475 U.S. at 586–87. First, although Plaintiffs attempt to cast Mr. Nypaver's testimony as establishing that his enforcement of the Ordinance was "arbitrary," it is clear from the full record that the Ordinance vested Mr. Nypaver with discretion to issue (or not issue) SWEEP Tickets and

that he exercised that discretion. It is undisputed that Mr. Nypaver did use the word "arbitrary" during his deposition testimony:

> Q: So, again, if it's debris, but as long as it's neat, that doesn't violate the code?
> A: Not necessarily. It's an arbitrary call on my part.
> Q. I see. So you arbitrarily decided not to do anything about this; is that right?
> A: Because it didn't meet – as I said before, because it didn't meet the intent of the SWEEP program.

ECF No. 45-1 at 108:10–18. [6] Later in that same exchange, Mr. Nypaver clarified that, "[m]y ability to make that decision, whether it is causing a condition that's offensive, and I believe if it's covered up in an orderly fashion, it wouldn't warrant me stopping there and writing a ticket." *Id.* at 110:17–21.

Plaintiffs focus entirely on Mr. Nypaver's use of the word "arbitrary" in an attempt to avoid facing Mr. Nypaver's testimony in its full context: far from being *arbitrary*, Mr. Nypaver's enforcement of the Ordinance was *discretionary*. *See* ECF No. 45-1 at 111:6–8 ("Yes, whether it's a property maintenance violation or a SWEEP violation. You always have discretion whether you write a ticket or not."). Indeed, the Ordinance itself provides for such discretion. *See* ECF No. 40-4 at 12 (Section 5.2 of the Ordinance, which provides that "[a]ny violation of the provisions of this Ordinance *may* be cause for a citation, a violation ticket, and/or a notice of violation to be issued to the violator.") (emphasis added). And the record before the Court reveals that, in the exercise of that discretion, the Borough and Mr. Nypaver, its Code Enforcement Officer, issued more than 50 Sweep Tickets to more than 20 different property owners (one of whom was Mark Yakopovich) in 2019. *See* ECF No. 46-1 at 10–11 (Borough of Centerville SWEEP Tickets log).

---

[6] The "it" in this exchange refers to a collection of objects depicted in the photograph located at ECF No. 45-4 at 103. It is not clear from the photograph or from Mr. Nypaver's deposition testimony what, exactly, is depicted in this photograph. *Compare* ECF No. 45-1 at 102:15–103:16 (Mr. Nypaver speculating that the objects could be "farm equipment" or "boxes") *with* 112:5–10 (Plaintiffs' counsel representing—and instructing Mr. Nypaver to assume—that the objects are "old furniture.").

As noted above, a "class of one" claim is subject to rational basis review. *See Olech*, 528 U.S. at 564. "The test is 'very deferential' and '"is met if there is any reasonably conceivable state of facts that could provide a rational basis" for the differing treatment.'" *M. Rae, Inc. v. Wolf*, 509 F.Supp.3d 235, 246 n.25 (M.D. Pa. 2020) (quoting *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (internal citation omitted)). Thus, although Mr. Nypaver's use of the word "arbitrary" provides Plaintiffs with a soundbite, in context that comment alone does not raise a triable fact as to whether Defendants intentionally and irrationally treated Plaintiffs' differently from other, similarly-situated property owners.

Second, in an effort to show that they were similarly situated to other people but were treated differently, Plaintiffs point to a collection of approximately 200 photos they took of purported Ordinance violations visible on other properties, some of which did not receive SWEEP tickets. *See* ECF No. 44 at 5. When Mr. Nypaver was questioned about a subset of these photos, he testified that tickets were not issued because he either (1) did not see the violation; (2) did not receive a complaint about the violation; or (3) other enforcement action was taken against the property owner. *See id.* (collecting citations to Mr. Nypaver's deposition testimony regarding such properties). In light of Mr. Nypaver's undisputed testimony that he might patrol certain areas of Centerville as few as two, and less than 10, times per year, *see, e.g.,* ECF No. 45-1 at 80:16–24; 92:1–93:8, the lack of any evidence showing that a purported violation depicted in one of Plaintiffs' photos was visible on a day that Mr. Nypaver patrolled that section of the Borough means that there is insufficient evidence from which a reasonable jury could conclude that Defendants intentionally and irrationally treated Plaintiffs differently than other, similarly-situated property owners.

Plaintiffs admit that violations existed on their property at the time the November 8, 2019 SWEEP Ticket was issued, *see* ECF No. 43 at ¶¶ 9-10 and 13, and the photos they submitted do not identify any property owners with similar violations at the same time who were not so cited. Thus, they have not pointed to evidence from which a reasonable jury could find in their favor. Even if Plaintiffs had been able to identify one or more owners with similar violations at the same time who were not so cited, given the discretion retained by Mr. Nypaver, such other violations still may not have risen to a genuine dispute of material fact for trial.

Indeed, as the Supreme Court noted (albeit in *dicta*) in *Enquist v. Oregon Department of Agriculture*, the fact that a state actor with discretionary authority enforces some, but not all, similar violations on its own likely cannot raise a triable question of fact where a plaintiff is proceeding on a class of one claim. *See* 553 U.S. 591 at 603 (2008) ("There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.").  In *Enquist*, the Supreme Court, using the example of a driver who was caught speeding complaining that the police officer who pulled him over did not pull over every other speeder on that stretch of road, concluded that absent some additional facts "implicat[ing] basic equal protection concerns" (like, for example, race or sex-based discrimination) such a claim could not stand. *Id.* at 604 ("But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action.").  Plaintiffs' claim fits squarely within this framework, and, therefore, their evidence of other violations that were not ticketed,

without more, stands on no better footing than the speeding driver who complains that other speeders were not stopped. Plaintiffs' evidence is simply insufficient to demonstrate that Defendants subjected them to treatment that was "irrational and wholly arbitrary." *Olech*, 528 U.S. at 565. Accordingly, Defendants' Motion will be GRANTED.

**V.     Conclusion**

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Borough of Centerville and Myron Nypaver is hereby GRANTED. Plaintiffs' Complaint is hereby DISMISSED.

DATED this 26th day of October, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record